**O'BRIEN, BELLAND & BUSHINSKY, LLC**
509 S. Lenola Road
Building 6
Moorestown, New Jersey 08057
(856) 795-2181
By:   Steven J. Bushinsky, Esquire
       W. Daniel Feehan, Esquire

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRUSTEES OF INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 711 HEALTH & WELFARE FUND, VACATION FUND, AND PAINTERS DISTRICT COUNCIL 711 FINISHING TRADES INSTITUTE for and on behalf of themselves and said FUNDS; and INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 711, <br><br> *Plaintiffs,* <br><br> v. <br><br> LCE GROUP LLC d/b/a LC ENGINEERING, LLC, <br><br> *Defendant.* | Case No: <br><br> *Civil Action* <br><br><br><br> **COMPLAINT** |

Plaintiffs, Trustees of International Union of Painters and Allied Trades District Council 711 Health & Welfare Fund, *et. al.*, by and through undersigned counsel, state as follows:

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to Section 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132 and §1145 respectively, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, and the common law of ERISA.

2. This Court is one of proper venue pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2) as the Trust Funds are administered in the State of New Jersey, the breach took place in New Jersey and Defendant maintained and/or maintains a principal place of business in the State of New Jersey.

3. A copy of this Complaint is being served on the Secretary of Labor and the Secretary of Treasury of the United States by certified mail in accordance with 29 U.S.C. §1132(h).

## **PARTIES**

4. Plaintiffs, International Union of Painters and Allied Trades District Council 711 Health & Welfare Fund, Vacation Fund and Painters District Council 711 Finishing Trades Institute (the "Funds"), are trust funds established and maintained pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5) and are employee benefit plans established and maintained pursuant to Section 3(1), (2) and (3) of ERISA, 29 U.S.C. §1002(1), (2) and (3), for the purpose of providing health, retirement, and other benefits to eligible participants and their beneficiaries.

2

The Funds qualify to commence this action under Section 502(d)(1) of ERISA, 29 U.S.C. §1132(d)(1).

5. The Funds are also the collecting agent for the Labor Management Cooperation Initiative ("LMCI"), National Finishing Trades Institute of New Jersey ("N-FTI"), Industry Advancement Fund ("IAF"), Safety Training Recognition Awards Program ("STARS"), and the Political Action Committee ("PAC").

6. The Funds are authorized to sue in their own names pursuant to Section 502(d)(1) of ERISA, 29 U.S.C. §1132(d)(1).

7. The Trustees are "Fiduciaries" of the Funds within the meaning of Section 3(21) of ERISA, 29 U.S.C. §1002(21)(A).

8. The Funds maintain their principal place of business at 27 Roland Ave, Suite 200, Mt. Laurel, New Jersey 08054.

9. The Funds bring this action on behalf of their Trustees, participants and beneficiaries pursuant to Section 502 of ERISA, 29 U.S.C. §1132, and Section 301 of LMRA, 29 U.S.C. §185.

10. Plaintiff, International Union of Painters and Allied Trades District Council 711, (the "Union") is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and Section 3(4) of ERISA, 29 U.S.C. § 1002(4), and represents employees in an industry affecting commerce.

11. The Union brings this action for dues checkoffs and other contributions owed by Defendant pursuant to the terms and conditions of the parties' Collective Bargaining Agreement ("CBA").

12. The Union maintains its principal place of business at 9 Fadem Road, Springfield, New Jersey 07081.

13. Defendant, LCE Group LLC ("LCE"), referred to hereinafter as "Defendant" or "Employer" is a party of interest as defined in Sections 3(5) and 3(14) of ERISA, 29 U.S.C. §1002(5) and (14) respectively and, is an employer in an industry affecting commerce within the meaning of Section 301 of LMRA, 29 U.S.C. §185.

14. Upon information and belief, Defendant principal place of business is located at 325 Pine Street,1 Floor, Elizabeth, NJ 07206.

15. Defendant conducted and/or conducts business in the State of New Jersey.

## FACTS

16. At all times relevant hereto, Defendant, was party to and agreed to abide by the terms and conditions of a CBA with the International Union of Painters and Allied Trades District Council 711 or one or more labor unions affiliated with the Union.

4

17. At all times relevant hereto, Defendant, agreed to abide by the terms of the Agreements and Declarations of Trust ("Trust Agreements") which govern the Funds. The Trust Agreements set forth the rules and regulations with respect to participation in and administration of the Funds.

18. By virtue of the CBA, Trust Agreements, and in accordance with relevant law, Defendant, is obligated:

    a. To remit fringe benefit contributions to the Funds on behalf of its eligible employees who are members of or are represented by International Union of Painters and Allied Trades District Council 711 (hereinafter "bargaining unit employees") and are employed on projects within the Union's jurisdiction;

    b. To remit fringe benefit contributions to the Funds in a timely manner on behalf of said employees;

    c. To submit monthly remittance reports to the Funds detailing all bargaining unit employees who worked in a given period of time, the wages paid to those employees in that period, and the amounts of fringe benefit contributions to be remitted to the Funds on behalf of said employees based upon the gross labor payroll paid by Defendant on behalf of its bargaining unit employees;

    d. To produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of Defendant's records concerning its obligations to the Funds to ensure that the proper contributions have been made on

5

behalf of bargaining unit employees and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreements;

   e. To pay all delinquencies uncovered by the audit together with liquidated damages, interest, audit costs, and all costs of litigation, including attorney's fees, expended by the Funds to collect any amounts due as a consequence of Defendant's failure to comply with its contractual and statutory obligations.

19. Pursuant to the CBA, Defendant has an obligation to provide remittance reports on a monthly basis to the Funds. A remittance report lists the employee, wages paid, and the corresponding amount of fringe benefit contributions owed based upon the gross labor payroll for the reported month. A payment for the fringe benefit contributions owed should be included with the monthly remittance report.

20. Defendant prepares the monthly remittance report described above on a self-reporting basis without assistance from the Union or Funds.

21. The amount of fringe benefit contributions is calculated from the gross labor payroll paid by Defendant to its bargaining unit employees.

22. At all times relevant hereto, Defendant agreed to abide by the terms of the Policy for the Collection of Delinquent Fringe Benefit Contributions for the Funds ("Collection Policy").

6

23. Pursuant to the Funds' respective Trust Agreements and the Funds' Collection Policy a payroll compliance review or "audit" is the Funds' procedure to ensure that the Employer has accurately reported and remitted the correct amount of fringe benefit contributions.

24. By virtue of the Collection Policy the Trustees have the discretion to determine which employers will be audited in any particular year, and may conduct an audit for cause ("for cause audit") if, in their discretion, there exists facts that would require a reasonably prudent fiduciary to conduct an audit of a particular employer for a particular time period.

25. As part of the audit program the Funds' Auditor sent Defendant a written request for financial documents dated May 4, 2021. These financial documents are necessary for the Auditor to verify that Defendant has complied with its contractual obligation to accurately remit fringe benefit contributions on behalf of its bargaining unit employees represented by the International Union of Painters and Allied Trades District Council 711. The request originally included financial documents for the January 1, 2019 through May 4, 2021.

## COUNT ONE
**Failure to Comply with Audit**

26. The allegations of paragraphs 1 through 25 above are incorporated by reference as if fully set forth herein.

27. The amount of fringe benefit contributions that Defendant is required to pay to the Funds is based upon the amount of wages paid to its bargaining unit employees who perform work that is covered by the CBA(s).

28. The Funds are without sufficient information or knowledge to plead the precise nature, extent, or amount of Defendant's delinquency because the books, records, and information necessary to determine this liability are in the exclusive possession, custody, control, and knowledge of Defendant.

29. Computation of the precise amount of any delinquency is best achieved by an audit of Defendant's financial books and records to compare them to the contractually required remittance reports submitted by the Employer.

30. An audit of the payroll and disbursement records of Defendant is needed to determine precisely the amounts of the Employer's delinquency.

31. On May 4, 2021, the Fund Auditor sent correspondence to Defendant requesting financial records for the period of "…January 1, 2019 through present".

32. Despite repeated requests Defendant has failed to produce any financial records.

33. Defendant is required by the controlling CBA(s), Trust Agreements, Collection Policy and applicable law to permit the Funds to audit their records, to cooperate in determining the contributions due to the Funds, to pay any contributions

and penalties found to be due and owing to the Funds, and to pay the cost of the audit if found to be delinquent.

34. The Funds and their fiduciaries are adversely affected or damaged by the lack of an audit as, among other things, they have a fiduciary duty to audit and confirm amounts due from contributing employers, such as Defendant.

35. The Funds and their fiduciaries have no adequate remedy at law for the lack of an audit, as the calculation of any damages suffered due to under reporting of wages can only be ascertained from an audit of Defendant's financial records.

**WHEREFORE**, the Funds respectfully request the following relief:

(A) Order Defendant its officers, agents, servants, employees, attorneys and all others, to permit an audit of all records under the actual or constructive control of Defendant, and in the absence of such records, to cooperate in alternative methods for the determination of contributions which are due;

(B) Order Defendant to pay all contributions due and owing to the Funds upon completion of the audit;

(C) Order Defendant to pay all dues check offs due and owing to the Union upon completion of the audit;

(D) Order Defendant to pay interest on the delinquent contributions as provided by 29 U.S.C. §1132(g);

(E) Order Defendant to pay liquidated damages on the delinquent contributions in the amount of twenty percent (20%) as provided by 29 U.S.C. §1132(g);

(F) Order Defendant to specifically perform all obligations to the Funds under the CBA;

(G) Order Defendant to pay the Funds' reasonable attorney's fees incurred in the prosecution of this action as provided by 29 U.S.C. §1132(g); and

(H) Order any such other and further relief as this Court may deem equitable, just and appropriate.

## COUNT TWO
### Seeking Injunction and Specific Performance

36. The allegations of paragraphs 1 through 35 above are incorporated by reference as if fully set forth herein.

37. A money judgment or other remedy available at law is inadequate because Defendant shown their disregard of their contractual and legal obligation by their refusal to permit an audit, its refusal to turn over Union dues check offs unlawfully withheld from Defendant's bargaining unit employees, and a consistent pattern of delinquencies and other acts.

38. The continued refusal of Defendant to abide by the CBA, and the Funds' respective Trust Agreements has been, and is continuing to cause immediate and irreparable harm to the Funds and Union.

39. By refusing to provide financial documents necessary to conduct an audit, and by refusing to comply with the requirement to remit timely contributions, Defendant's bargaining unit employees are being denied the benefits to which they are contractually entitled.

40. Compelling Defendant to comply with the CBA, and the Funds' respective Trust Agreements will not cause irreparable harm to Defendant, but rather will be consistent with public policy favoring the collection of fringe benefit contributions, and payment of amounts for Union dues check offs unlawfully withheld from bargaining unit members wages.

41. Moreover, compelling Defendant to adhere to the CBA, and the Funds' respective Trust Agreements will further the public policy to protect the interests of participants and beneficiaries of employee benefit plans. See, ERISA § 2(a) – (c), 29 U.S.C. 1001 (a) – (c).

42. In light of the fact that Defendant is bound by all of the terms and conditions of the CBA, and the Funds' respective Trust Agreements, Plaintiffs are likely to prevail on the merits.

43. Unless ordered otherwise by this Court, Defendant will continue its conduct in violation of the CBA and Trust Agreements, and as a result, underreport and underpay their contributions, and Plaintiffs and their participants and beneficiaries will be irreparably damaged.

44. Unless ordered otherwise by this Court, Defendant will continue its conduct in violation of the CBA, and as a result continue to retain for its own benefit Union dues check offs unlawfully withheld from Defendant's bargaining unit employees who will be irreparably damaged.

45. All other conditions precedent to equitable relief have been satisfied.

**WHEREFORE**, the Plaintiffs respectfully request the court to:

(1) Permanently restrain and enjoin Defendant, their officers, agents, servants, employees, attorneys, and all others in active concert or participation with them from continuing to violate the terms of the current CBA between Defendant and the Union, and the Funds' respective Trust Agreements, providing for the timely filing of remittance reports with complete, accurate and proper information and timely payment of contributions to the Plaintiffs and to turn over Union dues check offs withheld from Defendant's bargaining unit employees for so long as Defendant is contractually required to do so, and;

(2) Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT THREE
### Failure to Provide Bond

46. The Funds incorporate the allegations in Paragraphs 1 through 45 of this Complaint as if set forth herein in their entirety.

47. At all times relevant hereto, Defendant was party to or agreed to abide by the terms and conditions of a CBA(s) with the Union or one or more local labor unions or district councils affiliated with the Funds.

48. At all times relevant hereto, Defendant agreed to abide by the terms of the Agreements and Declarations of Trust ("Trust Agreements") which govern the Funds, as well as the Policy for Collection of Fringe Benefit Contributions ("Policy"). The Trust Agreements and the Policy set forth the rules and regulations with respect to participation in, and administration of, the Funds.

49. The CBA to which Defendant Defendant is bound requires that the company post a surety bond with the Funds as obligees or a cash deposit of $50,000.00 to secure Defendant's obligation to make payments to the Funds.

50. Plaintiffs, on several occasions prior to the commencement of this cause of action, demanded that Defendant post a surety bond, cash bond or equivalent and that said surety bond be provided with Plaintiffs as obligees to protect the interest of Plaintiffs' participants and beneficiaries.

51. Plaintiff Funds gave Defendant written notices of their demand that Defendant is in breach of the surety bond requirement by failing to post a surety bond, cash bond or equivalent in a sum as required by the Trust Agreement.

52. Defendant has failed and refused to comply with the Funds' demand despite being obligated to do so pursuant to the terms and conditions of the CBA between the Union and Defendant and therefore breached the CBA.

53. The Funds are third-party beneficiaries of the CBA between the Union and Defendant.

54. Plaintiff Funds will suffer irreparable injury and harm from Defendant's breach of the CBA as set forth above in that the Funds' ability to ensure collection of required employer contributions to the Funds is jeopardized by Defendant's failure to post the required surety bond, cash bond or equivalent with Plaintiffs as obligees.

55. Plaintiff Funds will suffer irreparable injury and harm from Defendant's breach of the CBA as set forth above in that the Funds' ability to purchase and provide benefits to its participants and beneficiaries will be jeopardized if the Funds cannot secure payment of Defendant's obligations which will result from Defendant's failure to post the required surety bond, cash bond or equivalent with Plaintiffs as obligees.

56. The Funds will suffer irreparable injury and harm from Defendant's breach of the CBA as set forth above in that the Funds will lose investment opportunities which would benefit the Funds' participants and beneficiaries as a result of Defendant's failure and refusal to post the required surety bond, cash bond

or equivalent with Plaintiffs as obligees thereby depriving the Funds from securing payments that Defendant is obligated to make to the Funds.

57. The relief sought by the Funds against Defendant will not harm Defendant to a greater extent than that which the Funds will suffer if the relief sought by them is not granted as the Funds seek to enforce their rights under a clear and unambiguous contract provision.

58. The public interest is best served by granting the Funds the relief sought against Defendant.

59. The Funds are without adequate remedy at law and therefore are entitled to equitable relief against Defendant.

WHEREFORE, the Funds respectfully request the following relief:

(A) For a preliminary injunction enjoining Defendant from violating the terms of the CBA as to the Funds and ordering Defendant to post a surety bond, cash bond or equivalent in a principal sum of $50,000.00 with Plaintiffs as obligees;

(B) Order Defendant to specifically perform all obligations to the Funds under the CBA;

(C) Order Defendant to pay the Funds' reasonable attorneys' fees incurred in the prosecution of this action as provided by 29 U.S.C. §1132(g); and

(D) Order any such other and further relief as this Court may deem equitable, just and appropriate.

Respectfully submitted,

**O'BRIEN, BELLAND & BUSHINSKY, LLC**

*Attorneys for Plaintiffs*

By: _____
W. Daniel Feehan, Esquire
Steven J. Bushinsky, Esquire
509 S. Lenola Road
Building 6
Moorestown, NJ 08057
856-795-2181
dfeehan@obbblaw.com

Dated: March 9, 2022